[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE REVISED THIRD PARTY COMPLAINT
In this case Blue Cross brought an action against the defendant Crestwood Ford. Crestwood Ford was insured by Blue Cross under a group health insurance policy. Blue Cross alleges that it paid extensive amounts of money for medical treatment for a person who was supposed to be an employee of Crestwood Ford. Blue Cross in its complaint alleges this person was not in fact an employee of this business and that Crestwood Ford misrepresented the employee's disability and employment status during the application and renewal process of the Blue Cross policy.
The defendants Crestwood Ford Denise Benemerito and Louis Benemerito impleaded the third party defendants the Robinson Company and Mr. Savelle an insurance agent for the Robinson Company. Robinson Company is a group of companies one of which, Group Insurances Inc., provides group health insurance services. In the first count of the third party complaint Crestwood Ford and the Benemeritos, the third party plaintiffs, allege the third party defendants, Savelle and the Robinson Company, knew of Crestwood Ford's desire to keep the employee insured through Crestwood's Group health insurance plan. Crestwood and the Benemeritos allege in this regard that the third party defendants CT Page 5767 gave them certain advice regarding the employee's insurance and application for social security disability benefits while she received Blue Cross benefits and also gave approval to all communications and representations made by Crestwood to Blue Cross. Crestwood and the Benemeritos allege these representations and the advice given by the Robinson Company and Savelle exposed them to liability and thus they should pay any damages incurred by Crestwood as a result of the suit by Blue Cross against Crestwood and the Benemeritos..
The second count alleges any negligent misrepresentations made to Blue Cross were caused by the negligent instructions and advice of the third party defendants.
In court three the third party plaintiffs allege the third party defendants were negligent in instructing them how to obtain insurance for this employee thus exposing them to liability for violating the Blue Cross group plan.
In count four the third party plaintiffs allege a violation of CUTPA.
All counts all allege the Robinson Company and Savelle were duly authorized agents and fiduciaries of the third party plaintiffs at the time of the above mentioned events which form the basis of the third party complaint.
The third party defendants have now moved to strike the four counts of the third party complaint. In ruling on a motion to strike the court must give that reading to the pleadings that is most favorable to the non-moving party. Also it should be noted that pursuant to Practice Book § 141 the court will regard the complaint of Blue Cross against the third party plaintiffs to be part of the third party complaint in passing on its legal sufficiency. In the third party complaint the Blue Cross complaint was referred to as "Exhibit A" and attached to the third party complaint.
(1)
The third party complaint is a common law indemnity action. When a claim for indemnification is grounded in tort several elements must be alleged to establish that a party was primarily negligent and liable to indemnify a secondarily negligent tortfeasor. Four of the elements are (1) the party must have been CT Page 5768 negligent (2) its negligence rather than another's was the direct and immediate cause of the injury or damage (3) it had exclusive control over the situation (4) the negligent party seeking indemnification did not know of the charged party's negligence, had no reason to anticipate it and could have reasonably relied on that party to act without negligence, Weintraub v. Dahn, Inc.,188 Conn. 570, 573 (1982); Kaplan. et al. v. The Merberg WreckingCorp., 152 Conn. 405, 416 (1965). Atkinson v. Berloni, 23 Conn. App. 325,328 (1990) added a fifth element — the alleged indemnitor owed the party seeking indemnification a duty based on an independent legal relationship.
The third party plaintiffs seek to strike the first three counts which are based in tort on the grounds that the third element is not properly alleged by the facts set forth in the; complaint — "nowhere do the plaintiffs allege that the third party defendants had `exclusive control' of the situation", (p. 8 of brief).
The third party plaintiffs' first response to this is to say that the Supreme Court nowhere imposes the requirement that the above mentioned elements must be "alleged" in the pleadings. The elements must just be proven at trial. This argument is belied by the fact that in Atkinson v. Berloni, Id., page 326 and Ferrymanv. Groton, 212 Conn. 138, 141 (1989) the legal sufficiency of an indemnification claim was tested by the appellate courts after a trial court had ruled on a motion to strike, see also Waddicor v.Bozrah Light Power Co., 8 CSCR 407 (1993), Jones v.Bouriogiannis, 1994 CT Case Base 3938 (1994). This is a fact pleading state; under § 108 P.B. "each pleading shall contain a plain and concise statement of the material facts on which the pleader relies." The materiality of the facts is determined by the legal theory being advanced or capable of being advanced given the facts alleged. A motion to strike contests the legal sufficiency of the allegations of a complaint, P.B. § 152; legal sufficiency is determined based on whether sufficient material facts are alleged to support a cause of action. The third party defendants here are doing just that. They claim insufficient material facts are alleged in the complaint to support an indemnification cause of action. There is no good reason why indemnification actions as opposed to other theories of liability should be spared the winnowing process sought to be achieved by motions to strike.
Turning to the merits of the motion to strike the third party CT Page 5769 defendants point to various allegations of the complaint; even accepting them as true, as is necessary on a motion to strike, it is argued that exclusive control by the third party defendant is not shown.
The plaintiffs state that they wished to keep the employee insured through Crestwood's group health insurance plan, obtain cost effective insurance of employees, sent the employee census list to Blue Cross and made the statements and representations to Blue Cross which form the basis of the original suit by Blue Cross against the third party plaintiffs. Given all this it is argued that even if the third party defendants advised Crestwood Ford and the Benemeritos and made the recommendations alleged in the third party complaint the facts alleged do not support a claim that the third party defendants had exclusive control of the situation that lead to the Blue Cross damages and losses.
The third party defendants cite the case of Coates v.Rolscreen, 1994 Ct. Sup. 6548. There the court held that the fact that a manufacturer had exclusive control over the production, manufacture, marketing, and distribution of a product was insufficient to show exclusive control of a situation that caused the death of the plaintiff's decedent. But in that case the suit was initially brought against the company that installed a window out of which the deceased fell to his death and the manufacturer Rolscreen. The installer of the window brought a third party complaint against Rolscreen on an indemnification theory. Absent an express or implied contract it is difficult for an installer of a product to allege "exclusive control" by a manufacturer as a grounds to implead them into a case under an indemnification theory — that may be why exclusive control was not alleged and the complaint was stricken.
Here the situation is somewhat different. The explicit language "exclusive control" is not used in the complaint but the complaint does allege a fiduciary relationship running from the third party defendants to the third party plaintiffs and that they acted on the advice and instructions of the third party defendants. That is a sufficient allegation of control of the stream of information that flowed to Blue Cross to raise a claim of exclusive control. What may be "exclusive control" in an indemnification action by an installer of a product against the manufacturer or by one entity against another who were doing work at a construction site where injury occurred raises different considerations when the claim is raised that one party acted on CT Page 5770 the advice of another, had reason to do so, and was entitled to so act given the existence of a fiduciary relationship. In that particular context what does control really mean. The following inferences and questions fairly arise from the pleadings. Did the Robinson Company or Savelle indicate to the third party plaintiffs what information they needed from Crestwood Ford to enable them to render their advice or tell Crestwood exactly what to send to Blue Cross? What was the exact nature of the relationship between these parties — how long did any fiduciary relationship exist — what was the inducement or nature of the representations made by the third party defendants to the plaintiffs to have them enter into the fiduciary relationship in the first place? Did Crestwood Ford and the Benemeritos have reason to know that the information being given to Blue Cross was false or misleading despite the fact that Mr. Savelle or the Robinson Company advised them that the information could or should be given to Blue Cross? How much expertise is needed in this area to determine what information should or not be sent to an insurer? These are questions that cannot easily be resolved by a motion to strike but are critical to resolving the question of "control". In fact the Kaplan case itself said: "Whether or not one is in control; of a situation is ordinarily a question of fact and it was here"; Kaplan, 152 Conn. at page 418. A motion to strike is not the appropriate vehicle to resolve this matter. Besides I do not believe Kaplan and Weintraub were intended to be straight jackets. There is a body of law for example that says that where a party carefully and in good faith does something which is not apparently illegal at the request or direction of another and the act injures another, an implied contract arises on the part of the person at whose direction the act was done and who is primarily liable for it, to indemnify the person doing the act, Anderson v. Local Union No. 3, 582 F. Sup. 627, aff'd.751 F.2d 546 (CA 2, 1984), Horrabin v. City of Des Moines,
199 N.W. 988 (Ia., 1924), Pennsylvania RR v. Tozzi, 207 N.Y.S. 16 (1924). It is not necessarily true that our state would accept this well recognized common law doctrine see 42 CJS "Indemnity" § 29, p. 120. However, it does underline the notion that when a party acts on the advice of another special concerns are raised in indemnification claims. Where the party giving the advice had a fiduciary obligation to do so in a specialized area it seems inappropriate to strike an indemnification action based on an argument that the party against whom indemnification is sought was not in control of the situation — the party claiming indemnification could argue it justifiably relied on the purported indemnitor to be in control that's why it entered into CT Page 5771 the fiduciary relationship or why the law, in any event, recognizes that a fiduciary relationship exists.
The motion to strike the first three counts of the third party complaint are denied.
(2)
The motion to strike is also aimed at the CUTPA claim asserted in the fourth count.
The third party defendants point to the fact that they were brought into this action pursuant to Section 52-102 (a) of the general statutes. In Commissioner v. Lake Phipps, 3 Conn. App. 10,102 (1985) it was said: "As a fundamental and threshold requirement, a third party plaintiff must allege that the third party defendant is or may be liable to the third party plaintiff for all or part of the plaintiff's claim. . . ."
It is also noted that third party indemnification claims are limited to those requesting indemnification under Rule 14(a) of the Federal Rules of Civil Procedure and our § 117 of the Practice Book seems to be modeled on that rule. The language of § 117 P.B. makes clear that a third party plaintiff is limited to claims for indemnity and contribution as to the claims asserted by the original plaintiff. If a defendant wants to make an additional claim or independent claim against another in the same action it must be by impleader rather than by a third party action, State v. Kement, 12 CLT #7, p. 20 (1985) ConnecticutPractice Moller Horton, Vol. 1, commentary to § 117 of the Practice Book.
A reading of Count Four does not properly limit the remedy sought but appears to raise a separate an independent CUTPA claim. Insofar as Count Four purports to raise such claim it is inappropriate.
The third party plaintiffs' response is to say that "all facts point to a conclusion that count four always was intended as a CUTPA indemnification cause of action" (May 29, brief). They note all the other counts allege an indemnification claim and the third party defendants were all brought into the case under §52-102 (a) and P.B. § 117 so that only indemnification on the CUTPA count is being sought. CT Page 5772
I do not think this is an appropriate response. Admittedly every favorable inference must be given to a non-moving party's pleading on a motion to strike but this principle cannot permit the court to read limitations into an overly broad remedy claim. The third party defendants are entitled to have the third party plaintiffs' claim tailored to meet the requirements of permissible third party action.
The Fourth Count is stricken.
Thomas Corradino, Judge